# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3986 | **DATE** | 10/29/2003 |
| **CASE TITLE** | Webeq International, Inc. vs. Red Publications, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ .

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
 ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER. The court denies RFD's motion to dismiss (#11-1). RFD is directed to answer the complaint within 7 days of this order. The case is set for a telephone status conference, to be initiated by the parties, on November 18. 2003 at 9:00am, to further discuss the possibility of settlement.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 3 0 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | 21 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| JD | courtroom deputy's initials | U.S. DISTRICT COURT OCT 29 PM | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WEBEQ INTERNATIONAL, INC., )
)
Plaintiff, )
)
vs. ) Case No. 03 C 3986
)
RFD PUBLICATIONS, LLC and )
ROCK COMMUNICATIONS, LTD., )
)
Defendants. )

**DOCKETED**
**OCT 3 0 2003**

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Webeq International, Inc. has sued Rock Communications, Ltd. for breach of contract, quantum meruit and unjust enrichment, and has also sued RFD Publications, LLC, for tortious interference with its contract and relationship with Rock. RFD has moved to dismiss for lack of personal jurisdiction and failure to state a claim. For the reasons stated below, the court denies RFD's motion.

### Facts

When a court considers a motion to dismiss for lack of personal jurisdiction, the facts alleged by plaintiff in the complaint are taken as true unless they are contradicted by affidavits submitted by the defendant. *E.g., Cherry Communications, Inc. v. Coasta Telephone Co.*, 906 F. Supp. 452, 454 (N.D. Ill.1995). If the parties submit conflicting affidavits, the conflicts are resolved in plaintiff's favor. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). Based on the parties' submissions, the facts relevant to this motion are as follows.

2|

Webeq is an Illinois corporation in the business of brokering the purchase or sale of used printing equipment. Am. Cmpl. ¶ 2. RFD is a Delaware limited liability company in the business of printing and publishing, with its principal place of business in Wilsonville, Oregon. RFD's Mot. to Dismiss at 2. Rock is an Iowa corporation also involved in the business of printing and publishing, with its principal place of business in Iowa. Am. Cmpl. ¶ 5.

In early 2003, Rock requested that Webeq locate a particular type of printing press for Rock. Kiska Aff. ¶7. On February 11, 2003, RFD sent an e-mail to various corporations, including Webeq in Illinois, announcing that RFD was ceasing operations. Am. Cmpl. ¶5. After seeing the e-mail, Webeq placed a phone call to RFD on February 12, 2003. *Id.* Later that day, RFD sent an e-mail to Webeq that included a list of equipment that RFD was selling as a result of the shutdown, including a press of the type sought by Rock. Am. Cmpl. ¶ 6. The e-mail stated that "there are at least two equipment brokers receiving this list," and that RFD "had no plans to retain the services of a broker" in connection with the sale of equipment. Am. Cmpl. ¶ 6.

On February 12, 2003, Webeq informed Rock that it had located the press Rock sought, and in turn, Rock asked Webeq for specific details regarding the press, including the name of the seller. Am. Cmpl ¶ 11. Rock informed Webeq that it was ready to buy the press, and according to Webeq, Rock agreed to work only with Webeq in purchasing the press and that Webeq would receive a five percent commission for its efforts in locating the press. Am. Cmpl. ¶ 11.

On February 13, 2003, Webeq advised RFD that Webeq had a "very interested customer" for the press. Am. Cmpl. ¶ 12. RFD did not request, and Webeq did not provide the name of the customer to RFD. Kiska Aff. ¶10. Webeq obtained from RFD additional information regarding

2

the press and forwarded the information and RFD's name to Rock on February 13. Am. Cmpl. ¶12. That same day, Rock advised Webeq that a representative of Rock would travel to Oregon to inspect the press at RFD's place of business. Am. Cmpl. ¶14. Webeq contacted RFD and requested a 10-day option on the press to allow for Rock's inspection and time to prepare an offer to purchase, which RFD declined. Am. Cmpl. ¶ 14. Webeq informed RFD that it had a prospective customer from Iowa who would be traveling to RFD's place of business to see the press. Am. Cmpl. ¶ 14; Kiska Aff. ¶ 10.

Webeq attempted to contact Rock numerous times after February 14, 2003 regarding the sale of the press, but it was unsuccessful in reaching Rock until March 11, 2003. Am. Cmpl. ¶ 17. On that day, Rock informed Webeq that it planned to acquire the press directly from RFD. Am. Cmpl. ¶ 18. Webeq alleges that RFD learned from Rock that it had agreed to work through Webeq, a commissioned broker, to purchase the press, but that RFD encouraged Rock to purchase the press directly and bypass Webeq. Kiska Aff. ¶ 4, 6, 11; Am. Cmpl. ¶ 18. On March 11 and 12, 2003, before Rock and RFD had finalized a deal, Webeq sent a facsimile and an email to RFD in which Webeq laid out the details of its brokerage agreement with Rock. Kiska Aff. ¶ 12; Miller Aff. ¶ 11. RFD contacted Rock, which still wished to proceed with the direct purchase of the press. Mem. in Support of RFD Mot. to Dismiss. at 4; Miller Aff. ¶ 12. RFD then advised Webeq that "any issues between Webeq and its customers regarding any brokerage agreement should be resolved by Webeq and its customers." Miller Aff. ¶ 12. RFD and Rock executed a contract for the sale of the press on March 14, 2003. *Id.* ¶ 13.

**Discussion**

**1. Personal Jurisdiction**

As the plaintiff, Webeq bears the burden of proving the existence of personal jurisdiction by a preponderance of the evidence. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997); *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). Because this is a diversity suit, this court can exercise jurisdiction over RFD only if an Illinois court could do so. *E.g., Systematic Mgmt. Sys., Inc. v. Royal Care, Inc.*, 2003 WL 1989645 1, at *2 (N.D. Ill. Apr. 29, 2003).

The Illinois long-arm statute allows Illinois courts to assert personal jurisdiction to the maximum extent permitted by the Illinois and United States Constitutions. 735 ILCS 5/2-209(c). Because Illinois courts have not elucidated any "operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction," the two constitutional analyses collapse into one. *Hyatt Int'l Corp. v Coco*, 302 F.3d 707, 715 (7th Cir. 2002).

Due process permits a court to exercise jurisdiction when the defendant has had "minimum contacts" with the forum such that the defendant could reasonably anticipate being haled into court there, and when the maintenance of the suit does not "offend traditional notions of fair play and substantial justice." *RAR*, 107 F.3d at 1277; *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The level of contacts required depends on whether the state asserts "general" or "specific" jurisdiction over a defendant. *RAR*, 107 F.3d at 1277. General jurisdiction permits the exercise of jurisdiction over a defendant that has "continuous and systematic" contacts with the forum state, even if the particular claim against the defendant did

4

not arise from those contacts. *Id.* Webeq does not contend that this Court has general jurisdiction over RFD.

To establish specific jurisdiction, Webeq must point to some act or transaction by which RFD created a connection with Illinois, such that it purposefully availed itself of the privilege of conducting activities in this state. The exercise of specific jurisdiction is limited to claims arising from the defendant's contacts with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985). RFD asserts that Webeq inquired as to the sale of the press during a phone call, Miller Aff. ¶ 8, but Webeq contends that it made no such inquiry but rather received an e-mail solicitation from RFD. Kiska Aff. ¶ 6, 7. As we must resolve disputed facts in Webeq's favor in this context, for present purposes we find that RFD initiated contacts with Webeq, an Illinois entity.

In arguing that specific jurisdiction exists, Webeq relies on *Janmark, Inc. v. Reidy*, 132 F.3d 1200 (7th Cir. 1997). Janmark, an Illinois company, sued Reidy, a California company, for inducing one of Janmark's customers in New Jersey not to purchase Janmark's products. *Id.* at 1202. The court found that "the state in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor." *Id.;see also Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Limited Partnership*, 34 F.3d 410, 411-12 (7th Cir. 1994). Noting that a "wrong does not become a 'tort' until injury has occurred," the court determined that "the location of the injury therefore is vital to understanding where the tort occurred." *Id.* Therefore, at the moment when the New Jersey customer decided not to purchase the Janmark product, an injury occurred in Illinois and it was reasonable for Reidy to expect to be sued in the state where the injury occurred. Id.

Although RFD objects to the use of *Janmark* because it is "highly criticized by other circuit Courts," *Divine/Whittman-Hart, Inc. v. King*, 2002 WL 1611585, at *4 n.3 (N.D. Ill. July 22, 2002), *Janmark* remains good law in this Circuit. *Id.* *Janmark* supports the exercise of personal jurisdiction over RFD. RFD concedes that it was advised on March 11 and 12, 2003, that Rock had a brokerage agreement with Webeq. Def. Mot. to Dismiss at 8; Miller Aff. ¶ 11. RFD then proceeded to finalize the sale for the press with Rock on March 14, 2003. Miller Aff. ¶ 13. Just as the injury in *Janmark* occurred when the New Jersey customer cancelled its order with Janmark, the injury in the instant case occurred when the contract was finalized between Rock and RFD on March 14, 2003. *Janmark*, 132 F.3d at 1202. And though we do not decide whether RFD's conduct was in fact tortious, it was fully aware when it finalized the deal with Rock that its action would impact an Illinois entity that claimed to have a prior deal with Rock. In short, RFD initiated contact with Webeq, and it then took actions outside of Illinois which it knew would adversely impact an Illinois entity. Under the circumstances, RFD's contacts with Illinois were not "random, fortuitous, or attenuated" such that the exercise of personal jurisdiction would be improper. *Heritage House Rests., Inc. v. Cont'l Funding Group, Inc.*, 906 F.2d 276, 283 (7th Cir. 1990).[1]

Because RFD "purposefully established minimum contacts" with Illinois, this Court must next determine if it would violate "traditional notions of fair play and substantial justice" to bring RFD into this forum. *RAR*, 107 F.3d at 1277 (citing *International Shoe Co. v. Washington*, 326

---

[1] RFD contends that Webeq's affidavit relies partially on inadmissible hearsay to establish that RFD induced Rock to purchase the press. Kiska Aff. ¶ 11. The statement in question is not hearsay, however, as it is offered not to prove the truth of the contents of the out of court statement, but rather to show that RFD was on notice of Rock's deal with Webeq.

U.S. 310, 316 (1945)). This determination requires analyzing the burden on the defendant, the interest of Illinois in adjudicating the dispute, and Webeq's interest in obtaining convenient and effective relief. *Divine/Whittman-Hart*, 2002 WL at 1611585, at * 5 (citing *International Shoe Co. v. State of Washington*, 326 U.S. 310, 320 (1945); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

Although there is no doubt some burden involved when an Oregon defendant has to litigate in Illinois, RFD could reasonably anticipate being sued in Illinois for having committed an allegedly tortious act against an Illinois entity. *See Interlease Aviation Investors II v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 911 (N.D. Ill. 2003). Furthermore, Illinois has an interest in adjudicating the suit because Webeq is an Illinois company and Webeq has suffered injury in this state. *Id.*; (citing *Int'l Molding Mach. Co. v. St. Louis Conveyor Co.*, 2002 WL 1838130, at *5 (N.D. Ill. Aug. 12, 2002)). Finally, as the plaintiff, Webeq has a strong interest in obtaining convenient and effective relief, as RFD's alleged interference with the contract between Rock and Webeq caused Webeq to lose its five percent commission for the sale of the press. Am. Cmpl. ¶ 57, 62. Therefore, this court concludes that it may properly exercise personal jurisdiction over RFD.

2.     **Failure to State a Claim**

RFD also contends that Webeq has failed to state a claim against RFD for tortious interference with contract and prospective economic advantage. A Rule 12(b)(6) motion is designed only to "test the sufficiency of the complaint, not to decide its merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). The plaintiff does not have to "plead facts or legal theories or cases or statutes," but only has to describe the claims simply. *Shah v. Inter-*

*Continental Hotel Chicago Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002). A complaint will be dismissed only if it is clear that the plaintiff can prove no set of facts in support of its claims that entitle it to relief. *Id.*

A claim for tortious interference with contract requires "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." *Int'l Marketing, Ltd. v. Archer-Daniels Midland Co.*, 192 F.3d 724 (7th Cir. 1999) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 154-55, 545 N.E.2d 672, 676 (1989)). Webeq sufficiently alleges these elements in Count 5 of its complaint. First, Webeq alleged the existence of a valid and enforceable contract between Webeq and Rock. Am. Cmpl. ¶ 11. Second, Webeq alleges that RFD was aware of the contractual relationship because of the fax that Webeq sent to RFD on March 12, 2003 regarding the contract. Am. Cmpl. ¶ 19. Third, Webeq sufficiently alleges that the RFD induced Rock to breach the contract. Am. Cmpl. ¶ 18. Fourth, Webeq clearly alleges that Rock breached the contract with RFD and subsequently bought the press directly from RFD. Am. Cmpl. ¶ 21. Fifth, Webeq alleges that it suffered damages in excess of $75,000. Am. Cmpl. ¶ 57. Because Count 5 alleges all of these elements, RFD's motion to dismiss that claim is denied.

RFD also moves to dismiss the tortious interference with prospective advantage claim in Count 6. To state a claim for tortious interference with prospective economic advantage, Webeq must allege "(1) a reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of this expectancy; (3) purposeful interference by the defendant that

prevents the expectancy from being fulfilled; and (4) damages to the plaintiff resulting from the interference." *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998). Webeq has sufficiently alleged the elements of this claim. First, by claiming that Rock specifically asked Webeq to look for a press for Rock, and by alleging that Rock promised Webeq that it would work only with Webeq in purchasing the press, Webeq alleged a reasonable expectation of entering into a valid business relationship with Rock. Am. Cmpl. ¶ 9. Second, in claiming that Webeq faxed RFD regarding this business relationship with Rock, Webeq properly alleges that RFD knew of the business expectancy between Rock and Webeq. Am. Cmpl. ¶ 60. Third, Webeq alleges that RFD interfered with the contract with Rock. Am. Cmpl. ¶ 61. Fourth, Webeq alleges that it was damaged in an amount greater than $75,000. RFD's motion to dismiss Count 6 is therefore denied.

## Conclusion

For the reasons stated above, the Court denies RFD's motion to dismiss [docket #11-1]. RFD is directed to answer the complaint within 7 days of this order. The case is set for a telephone status conference, to be initiated by the parties, on November 18, 2003 at 9:00 a.m., to further discuss the possibility of settlement.

MATTHEW F. KENNELLY
United States District Judge

Date: October 29, 2003